IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHAREE LEWIS o/b/o K.L.          :     CIVIL ACTION
                                 :
            v.                   :
                                 :
CAROLYN W. COLVIN,[1]            :
Acting Commissioner of Social Security   :   NO. 12-6186

**REPORT AND RECOMMENDATION**

ELIZABETH T. HEY, U.S.M.J.                            May 22, 2014

This action was brought pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying the application filed by Margie Wolfred on behalf of her minor grandson K.L. ("Plaintiff"), for supplemental social security income ("SSI") under Title XVI of the Social Security Act.[2] For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence. Therefore, I recommend that this matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for the former Commissioner, Michael J. Astrue, as the defendant in this suit. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] At the time of the application, Ms. Wolfred, Plaintiff's paternal grandmother, had custody of him. Tr. at 130, 132. By the time of the administrative hearing, Sharee Lewis, Plaintiff's mother, had regained custody of her son and subsequently filed suit on behalf of her son seeking review of the administrative denial of benefits. Id. at 244.

I.  **PROCEDURAL HISTORY**

Ms. Wolfred protectively filed an application for SSI on Plaintiff's behalf on April 2, 2009, alleging that he became disabled on January 1, 2005.[3]  Tr. at 115-17, 160.  The application was denied on July 21, 2009, and Plaintiff requested an administrative hearing on August 17, 2009.  Id. at 65-68, 69-70.  On April 5, 2011, an ALJ held a hearing to consider the matter de novo.  Id. at 31-63.  In a decision dated June 20, 2011, the ALJ denied the claim.  Id. at 13-28.  On August 29, 2012, the Appeals Council denied Plaintiff's request for review.  Id. at 1-3.  Therefore, the decision of the ALJ is the final decision of the Commissioner.  20 C.F.R. § 416.1472.

Ms. Lewis filed a complaint in federal court on her son's behalf on November 5, 2012, and filed a Brief and Statement of Issues in Support of Request for Review on April 8, 2013.  See Docs 3 & 13.  Defendant filed a response on May 9, 2013, and Plaintiff subsequently filed a reply.  See Docs. 16 & 20.  The Honorable Berle M. Schiller referred the case to the undersigned for a Report and Recommendation.

II.  **LEGAL STANDARDS**

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial

---

[3] The record also indicates that Plaintiff was granted benefits based on an earlier application in 2005.  Tr. at 118, 130.  It is unclear why Plaintiff's benefits were discontinued.

evidence is "such relevant evidence as a reasonable mind might accept as adequate," and must be "more than a mere scintilla."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 118 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.)).  The court has plenary review of legal issues.  Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

In the context of determining whether child benefits should be awarded, the Commissioner employs a three-step sequential evaluation that examines (1) whether the minor has engaged in substantial gainful activity, (2) whether he or she had a medically determinable severe impairment(s), and (3) whether the impairment(s) met, medically equaled, or functionally equaled the Listings.  20 C.F.R. § 416.924(a).  In order for impairment(s) to meet or equal the severity requirements of the Listings, there must be medical findings that met or equaled in severity all of the criteria for the Listing.  See Sullivan v. Zebley, 493 U.S. 521, 531 (1989).  In determining whether an impairment or combination of impairments functionally equals a Listing, the ALJ must assess the claimant's functioning in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b).

To functionally equal a Listing, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  Social security regulations define a "marked" limitation in a domain as one that interferes "seriously"

with Plaintiff's ability to independently initiate, sustain or complete activities, and as equivalent to "the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations from the mean." Id. § 416.926a(e)(2). An "extreme" limitation is one that interferes "very seriously" with Plaintiff's ability to independently initiate, sustain, or complete activities, and is equivalent to at least three standard deviations below the mean on standardized testing. Id. § 416.926a(e)(3).

### III. FACT RECORD AND THE ALJ'S DECISION

#### A. Plaintiff's Background and Medical Evidence

Plaintiff was born on December 27, 1996, and thus was 12 years old at the time the application was filed and 14 years old at the time of the ALJ's unfavorable decision. Tr. at 115, 118, 120, 129, 160. At the time of his administrative hearing, Plaintiff was in seventh grade, having been held back twice. Id. at 36, 48, 141, 191. He attends regular classes and has no history of work. Id. at 37, 191.

Plaintiff was placed in foster care in August 2007, when his mother was psychiatrically hospitalized. Tr. at 191. In September of 2007, Plaintiff was referred to the Children's Crisis Treatment Center by his foster care agency for assessment of "Behavioral Health services." Id. at 190-94. At that time, he was diagnosed with an unspecified adjustment disorder and bereavement at the death of his great-grandmother four years before, as well as missing his mother when he was placed in the foster care system. Id. at 190. At that time, he was assessed a Global Assessment of Functioning

("GAF") score of 49.[4]  In May 2008, treatment notes from Children's Crisis Center indicate that Plaintiff was in danger of failing the fourth grade and had a GAF of 52.[5]  Id. at 212.  Reunification of Plaintiff with his mother was planned for later in the summer of 2008.  After being reunited with his family -- in the custody of his paternal grandmother - he had some issues getting along with his father, who also lived in his grandmother's home.  Id. at 221.  Plaintiff continued to be seen at Children's Crisis Center, including treatment plan updates on May 8, August 20, and December 3, 2008, and February 24, 2009.  Id. at 212-14, 221-22, 223-25, 226-28.

On June 25, 2009, Peggy Marie Savage, Plaintiff's fifth grade teacher completed a teacher questionnaire.  Tr. at 140-47.  At the beginning of the questionnaire, Ms. Savage noted that Plaintiff should actually be in the eighth grade.  In the ten categories in the domain of acquiring and using information, Ms. Savage found that Plaintiff had no problem in eight of them and only a slight problem in the remaining two (comprehending oral instructions and reading and comprehending written material).  Id. at 141.  In the

---

[4]The Global Assessment of Functioning ("GAF") score is a measurement of a person's overall psychological, social, and occupational functioning, and is used to assess mental health.  Diagnostic and Statistical Manual of Mental Disorders, 4th ed. Text Revision (2000) ("DSM IV–TR"), at 32.  (Although the DSM has recently been replaced with a revised fifth edition, I will rely on the edition in effect at the relevant time.)  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Id. at 34.

[5]A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  DSM IV-TR at 34.

domain of interacting and relating with others, Ms. Savage noted that Plaintiff had a slight problem in three of the thirteen categories (seeking attention appropriately, expressing anger appropriately, and respective/obeying adults in authority) and no problem in the other ten. Id. at 143.[6] His grades for the 2008-2009 school year (fifth grade) show that he had A's and B's in all subjects for the second and third marking periods, and for his final grades for the classes. Id. at 150-56. Plaintiff's seventh grade (2010-2011) report card shows that some of his grades had fallen, with marking period grades of C and D for science, a C in the first marking period for social studies, and a C in a writing course. Id. at 172-73.

On July 21, 2009, Anthony Galdieri, Ph.D., completed a childhood disability evaluation form.[7] Tr. at 233-38. Dr. Galdieri found that Plaintiff had an unspecified adjustment disorder, a reading disorder and bereavement. Id. at 233. In the domains of functioning, the doctor found that Plaintiff had no limitation in attending and completing tasks, manipulating objects, caring for himself, and health and well-being. Id. at 235-36. He found that Plaintiff had less than marked limitation in acquiring and using information and interacting and relating with others. Id. at 235.

---

[6] In his brief, Plaintiff challenges the ALJ's findings with respect to the domains of acquiring and using information and interacting and relating to others. See Doc. 14 at 13-19. Therefore, I will not recount Ms. Savage's ratings for the other domains. The paragraph on page 19 of Plaintiff's brief is also directed at the domain of caring for oneself, but appears to be a cut and paste error directed at another litigant with the initials G.C. Id. at 19.

[7] It does not appear that Dr. Galdieri examined Plaintiff or conducted any independent testing with Plaintiff. Id. at 234.

Plaintiff began treatment at Cognitive Behavioral Services on March 18, 2010, at which time, Zaw Myint, M.D., conducted a Comprehensive Biopsychosocial Evaluation. Tr. 244-55.  Dr. Myint diagnosed Plaintiff with depression NOS (not otherwise specified), Attention Deficit Hyperactivity disorder ("ADHD"),[8] and an unspecified learning disorder.  Id. at 254.  He was assessed a GAF of 45-50 at the start of his treatment, and the major concerns were difficulties in learning and paying attention and interaction with his sister at home.  Id.  During Plaintiff's sixth grade school year, notes from Cognitive Behavioral Services indicate that Plaintiff was involved in four fights at school and that he had lashed out a few times.  Id. at 245.  In April 2010, he was started on Concerta.[9]  Id. at 243.

At the administrative hearing, Plaintiff was represented by a paralegal from Community Legal Services.  Tr. at 34.  Plaintiff's mother testified that Plaintiff acts more like an eight-year old than a fourteen-year old, and that he lacks certain academic skills such as knowing the months and reading.  Id. at 56-60.  After describing his difficulty reading, Plaintiff's mother noted that he needs to be tested.  Id. at 60.  Plaintiff's

---

[8]"The essential feature of [ADHD] is a persistent pattern of inattention and/or hyperactivity-impulsivity that is more frequently displayed and more than is typically observed in individuals at a comparable level of development."  DSM IV–TR, at 85.

[9]Plaintiff testified that he takes one medication for his behavior and one to aid sleep.  Tr. at 41.  The records from Behavioral Health show that he was prescribed Concerta, which is indicated for the treatment of ADHD, see http://www.drugs.com/search.php?searchterm=concerta (last visited may 12, 2014), and another that is difficult to discern, but appears to be Clonidine, which is used to treat hypertension and ADHD.  See id. at 243, http://www.drugs.com/clonidine.html (last visited May 12, 2014).

representative requested a consultative examination, "[l]ike specifically an IQ test or something since he's not . . . good with . . . reading," and the ALJ ordered such evaluation. Id. at 61. However, Plaintiff did not attend the scheduled evaluation, apparently because his mother was hospitalized when the examination was scheduled, and the ALJ issued her opinion without the benefit of the consultative examination. Id. at 183.

    B.    **ALJ's Opinion**

In a decision dated June 20, 2011, the ALJ found as follows:

1. At step one, Plaintiff had not engaged in substantial gainful activity since the date of his application. Tr. at 16.

2. At step two, Plaintiff has the following severe impairments: ADHD, a learning disability, and depression NOS. Id.

3. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

4. The ALJ also found that Plaintiff does not have an impairment or combination of impairments that functionally equals the listings. Id. Specifically, the ALJ found that Plaintiff has less than marked limitation in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, id. at 21-25, and no limitation in the domains of moving and manipulating objects, caring for yourself, and health and physical well-being. Id. at 25-28.

Accordingly, the ALJ concluded that Plaintiff has not been under a disability. Id. at 28.[10]

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because the ALJ (1) failed to develop the record, and (2) erred in failing to consider the

---

[10] Although ALJ Deborah Mande oversaw the administrative hearing, ALJ Susan Flynn issued the decision on behalf of ALJ Mande. Tr. at 28.

more recent academic and psychological records in the evidence.  See Doc. 14.  Defendant argues that the ALJ's decision is supported by substantial evidence and Plaintiff has filed a reply.  See Docs. 16 & 20.

## IV. DISCUSSION

As will be explained, Plaintiff's claims are actually intertwined.  Plaintiff complains that the ALJ failed to develop the record in two respects.  First, Plaintiff argues that the ALJ failed to obtain a consultative examination prior to issuing her decision.  Second, he complains that the ALJ failed to obtain the file of his earlier claim for benefits, which had been granted.  With respect to the consultative examination, Defendant counters that Plaintiff's representative shirked her responsibility to notify the ALJ of Plaintiff's failure to attend the consultative examination and the reason for doing so, and also argues that the record was sufficiently developed without the consultative examination.  See Doc. 16 at 26-29.

An ALJ has a duty to develop the evidentiary record whether the claimant is represented by counsel or not.  That duty is heightened when Plaintiff is proceeding pro se.

> While a claimant bears the burden of proving his disability, 20 C.F.R. § 404.1512(a), the Third Circuit "has repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence.  Dobrowolsky [v. Califano], 606 F.2d [403,] 406-07 [(3d Cir. 1979)].  "ALJs have a duty to develop a full and fair record in social security cases," Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995), and this duty is heightened when the claimant appears at the hearing without the benefit of counsel.  When the claimant is

> unrepresented, "the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). . . . When an ALJ "has failed to exercise his authority to attempt to fill significant evidentiary gaps that are material to the disability determination," remand is appropriate. Comiskey v. Astrue, No. 09-0252, 2010 WL 308979, at *7 (E.D. Pa. Jan. 27, 2010) (quoting Jozefick v. Shalala, 854 F.Supp. 342, 349 (M.D. Pa. 1994)).

Rosa v. Colvin, 956 F. Supp.2d 617, 620 (E.D. Pa. 2013) (Baylson, J.).

Here, although Plaintiff was represented, his representative was not an attorney, but rather a paralegal at Community Legal Services. It is not entirely clear how the ALJ's duty to develop the record applies when a claimant has a non-attorney representative. Compare Vaughn v. Astrue, No. 09-3009, 2010 U.S. Dist. Lexis 39031 (E.D. Pa. Apr. 19, 2010) (Slomsky, J.) (Order adopting Report and Recommendation of Rapoport, M.J.) (attached to Doc. 14 at 23) (ALJ's heightened duty to develop record applies in case of non-attorney representative) with 20 C.F.R. § 416.1540(a) (all representatives must faithfully execute their duties as agents and fiduciaries of a party). Regardless, considering the circumstances of this case, I conclude that the ALJ failed to adequately develop the record prior to issuing a decision.

Specifically in this case, I believe the ALJ erred in issuing a decision without the benefit of the results of the consultative examination ordered at the administrative hearing. "[T]he ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." Przegon v. Barnhart, No. 04-5313, 2006 WL 562966, at *3 (E.D. Pa. Mar. 6, 2006) (Dubois, J.) (quoting Thomas v. Halter, 45

Fed. Appx. 146, 149 (3d Cir. 2002) (non-precedential)).  In Przegon, the court found that the ALJ erred in failing to order a physical examination of Plaintiff when Plaintiff testified that her obesity interfered with her breathing and activities.  Id.  The Honorable Jan Dubois observed that "[t]he Court's review of the ALJ's fulfillment of this duty [to develop the record] is intertwined with the question of whether the Commissioner's determination is supported by substantial evidence."  Id.

Here, the ALJ properly ordered a consultative examination.  The regulations governing the domain of acquiring and using information for children Plaintiff's age state:

> In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments).  You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation).  You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas).  You should also learn to apply the skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

20 C.F.R. § 416.926a(g)(2)(v).  The regulations governing interacting and relating with others for children Plaintiff's age state:

> By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups.  You should begin to be able to solve conflicts between yourself and peers or family

>     members or adults outside your family.  You should
>     recognize that there are different social rules for you and your
>     friends and for acquaintances or adults.  You should be able
>     to intelligibly express your feelings, ask for assistance in
>     getting your needs met, seek information, describe events,
>     and tell stories, in all kinds of environments (e.g., home,
>     classroom, sports, extra-curricular activities, or part-time job),
>     and with all types of people (e.g., parents, siblings, friends,
>     classmates, teachers, employers, and strangers).

20 C.F.R. § 416.926a(i)(2)(v).

Looking at the record as a whole, although the answers given by Plaintiff's fifth grade teacher did not establish any significant deficits in these functioning domains and his foster mother described him as "just a good boy" at that time, the more recent academic and psychological reports evidence a worsening in Plaintiff's academics and behavior.  From fifth to seventh grade, Plaintiff's grades dropped from primarily A's and B's to B's and C's with the occasional D in seventh grade.  See id. at 150-51, 172-74, 190.  Additionally, notes from Cognitive Behavioral Services indicate that his sixth grade teacher "reported a few incidences where he lashed out . . . , four fights," and arguing with a teacher.  Id. at 245.  The prior evaluation, which appears to have been prepared from a record review, was prepared in July 2009, nearly two years prior to the administrative hearing, and did not include any intellectual testing.  Considering Plaintiff's academic, behavioral, and home-life changes in the intervening two years, the ALJ properly ordered a consultative examination.

Unfortunately, the ALJ issued her decision before the consultative examination was completed.  The problem arose because Plaintiff twice failed to attend the scheduled evaluation.  According to Plaintiff's representative, Plaintiff's mother was hospitalized on

the two dates that the consultative examination was scheduled -- May 13, and June 3, 2011 -- and Plaintiff's mother contacted the Bureau of Disability Determination to notify them that she was hospitalized.  Tr. at 183; Doc. 15 (declaration of counsel attaching documentation).  The examination was rescheduled for July 9, 2011.  Tr. at 186.  Unfortunately, the ALJ issued her decision before this examination was completed.

The Commissioner argues that there was no conflict or insufficiency in the evidence to require the consultative examination.  See Doc. 16 at 28-29.  I disagree.  As previously mentioned, the evidence shows deterioration in Plaintiff's academics and behavior.  In her discussion of the domains of acquiring and using information and interacting and relating to others, the ALJ focused on the teacher questionnaire and report card from fifth grade, and the evaluation prepared by Dr. Galdieri two years prior to the administrative hearing.  See tr. at 21-22, 24-25.  Noticeably absent from the ALJ's discussion of these two domains were his seventh grade report cards and the more recent treatment notes from Cognitive Behavioral Services evidencing his conflicts at school with classmates and teachers.[11]  Similarly, although the ALJ rejected the GAF scores of

---

[11]The ALJ's discussion of the Cognitive Behavioral Services records, which did not appear in the ALJ's domain discussion, was limited to the positive notations in those records including that "claimant tried hard to do his work, helped out, cleaned, did chores, and liked to go to church." Tr. at 20 (citing tr. at 245).  On that same page of treatment notes, the following appears, "School reported a few incidences where he lashed out when he was poked with a pencil in his neck.  At least four fights, he argued with a teacher today when he was asked to be quiet.  He was upset because the teacher was not chastising another child who was drinking his soda." Id. at 245.  The ALJ's consideration of the Cognitive Behavioral Services notes amounts to "cherry-picking" and ignoring medical assessments that ran counter to her conclusion.  See Rios v. Comm'r of Soc. Sec., 444 Fed. Appx. 532, 535 (3d Cir. Sept. 14, 2011) (ALJ's failure to

13

52 from 2008 and February of 2009 as inconsistent with the original assessment by Children's Crisis Treatment Center in September 2007, see id. at 20, the ALJ failed to explain her consideration of the March 2010 GAF score of 45-50 when Plaintiff was treated at Cognitive Behavioral Services, merely referencing the GAF score without any discussion. See id. at 20, 254.[12]

As Judge Dubois observed in Przegon, consideration of the ALJ's duty to develop the record is intertwined with consideration of whether the Commissioner's determination is supported by substantial evidence. 2006 WL 562966, at *3. In this case, the ALJ inadequately explained her consideration of the more recent academic records and psychological treatment notes, relying exclusively on the older, more favorable assessments in considering the relevant domains of functioning. Considering the decline evidenced from fifth grade to seventh grade and the ALJ's unspoken rejection of the GAF score assigned in March 2010, a consultative examination and intelligence testing are warranted.

Plaintiff also complains that the ALJ failed to obtain Plaintiff's prior claim file. Although Plaintiff's representative never requested that the ALJ obtain the file and did not explain how the prior claim file was relevant to the application filed in 2009, because I recommend that the case be remanded for further consideration of the later academic

---

address GAF scores which would not establish disability did not amount to "cherry-picking").

[12]Although Defendant argues that the ALJ considered the GAF scores and that GAF scores do not have a direct correlation to the severity requirements of the listings, see Doc. 16 at 13, the ALJ's failure to address the March 2010 GAF score in light of Plaintiff's deteriorating academics and behavior is troubling.

and psychological records, I also recommend that the Commissioner obtain the prior claim file and allow Plaintiff's representative to address the relevance of that file to consideration of the pending application.

## V.  CONCLUSION

The ALJ failed to properly consider the more recent academic and psychological evidence, which indicated increasing academic difficulties and behavioral problems.  The ALJ also failed to properly consider the most recent GAF score.  In light of all the evidence, the ALJ properly ordered a consultative examination, but through some communication lapse, issued her decision prior to the completion of that examination.  I recommend that upon remand, the ALJ obtain the consultative examination including intelligence testing and reconsider the more recent academic and psychological records.  I also recommend that the Commissioner obtain the prior claim file and permit Plaintiff's representative to explain its significance.

Therefore, I make the following:

## **R E C O M M E N D A T I O N**

AND NOW, this 22nd day of May 2014, it is RESPECTFULLY RECOMMENDED that Commissioner's decision denying SSI child's benefits be REVERSED and the case remanded for further proceedings consistent with this Report. The parties may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

        BY THE COURT:

        /s/ELIZABETH T. HEY
        _____
        ELIZABETH T. HEY
        UNITED STATES MAGISTRATE JUDGE